**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

PCS Professional Claim Service, LLC,
*a Florida Limited Liability Company*;
Orpha Emma Statezny Paciorek; and
Gary Wayne Harvell,

           Plaintiffs,

v.

Brambilla's Inc., *a Minnesota Corporation*;
Fleetwood Enterprises, Inc., *a Delaware
General Corporation*; and Fleetwood Motor
Homes of Pennsylvania, Inc., *a
Pennsylvania Corporation*,

           Defendants.

Civil No. 06-4540 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

---

Christopher P. Renz, Esq., and Ivory L. Ruud, Esq., Thomsen & Nybeck, PA, counsel for Plaintiffs.

Mark R. Bradford, Esq., Bassford Remele, P.A., counsel for Defendants.

---

**INTRODUCTION**

This matter came before the Court on October 12, 2007, pursuant to Defendants'
Motion for Summary Judgment. The case arose out of the alleged defects and
insufficient repairs in two motor homes manufactured by Defendant Fleetwood Motor
Homes of Pennsylvania, Inc. ("Fleetwood PA") and sold to Plaintiffs by Brambilla's, Inc.
("Brambilla's"). For the reasons stated below, Defendants' motion is granted in part and
denied in part.

## BACKGROUND

Plaintiff Orpha Emma Statezny Paciorek ("Paciorek") owns Plaintiff PCS Professional Claim Service, LLC  ("PCS"), a company that adjusts insurance claims. Plaintiff Gary Wayne Harvell is a PCS employee.  In 2005, before PCS was officially formed, Paciorek decided to purchase two motor homes for business purposes. Specifically, Paciorek planned to use the motor homes for transportation to and from out-of-state losses and to provide employees with temporary living quarters while they were tending to those losses.

In early September 2005, Paciorek and Harvell visited Brambilla's, a recreational vehicle ("RV") dealership located in Shakopee, Minnesota, several times to look at various motor homes.  Brambilla's sells RVs manufactured by Fleetwood PA.[1]  Paciorek and Harvell dealt primarily with salesman Dave Willemssen at Brambilla's.  Plaintiffs contend that while visiting Brambilla's, Paciorek told Willemssen that PCS employees would be using the RVs as workstations and living spaces while adjusting claims. Plaintiffs contend that Willemssen told them that the RVs would work well for such purposes.  Plaintiffs also contend that sometime during their visits to Brambilla's, they received a brochure that addressed the Fleetwood Southwind RV's qualities.

---

[1]      Fleetwood PA is a subsidiary of Defendant Fleetwood Enterprises, Inc.

On September 6, 2005, [2] Paciorek executed Purchase Agreements with Brambilla's for a new blue 2005 Fleetwood Southwind motor home (the "Blue RV")[3] and a new green 2005 Fleetwood Southwind motor home (the "Green RV").  Not including license, tax, transfer fees, insurance and add-ons, the purchase price for the Blue RV was $145,419.00 and $133,134.90 for the Green RV.

The Purchase Agreements for both RVs contained identical statements on the front page:

> **The front and back of this CONTRACT** comprise the entire CONTRACT affecting this purchase.  The DEALER will not recognize any verbal agreement, or any other agreement or understanding of any nature.

(Affidavit of Mark R. Bradford ("Bradford Aff."), Exs. B, C (emphasis in original).)  The front page of both Purchase Agreements also included the following disclaimer:

### DEALER'S DISCLAIMER OF WARRANTY

> The Dealer expressly disclaims all warranties, either express or implied on the vehicle sold, except any warranties offered and explained in Paragraphs 10 through 13 on the back of this contract.  Buyer acknowledges receiving this information before the sale and further acknowledges having read and understood the provisions on the back of this contract.

(*Id*.)  Paragraph 10 on the back of the Purchase Agreements stated the following:

> **New VEHICLE Disclaimer of Warranties:**  If YOU are buying a new VEHICLE, the VEHICLE will come with a manufacturer's warranty which is a promise from the manufacturer directly to YOU.  Unless otherwise agreed in a separate document (see Paragraph 12 below), I

---

[2]     At this time, PCS was not yet formed.

[3]     Harvell is a co-owner of the Blue RV.  Plaintiffs assert that Paciorek holds title to both RVs for the benefit of PCS.

> expressly disclaim all warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose.  I sell the VEHICLE "AS IS" and make no guaranties of any kind about the VEHICLE's quality or performance.  YOU have complete responsibility and all the risk for any problems with the VEHICLE. . . .

(*Id.*)  In addition to the Purchase Agreements, Brambilla's presented Plaintiffs with a delivery check-out document signed by a Brambilla's employee, indicating that all items on the checklist had been performed.

Plaintiffs took possession of the Blue and Green RVs on September 14 and 15, 2005.  An Owner's Manual was left in each RV.  Both manuals contained a "LIMITED ONE-YEAR/THREE YEAR WARRANTY" issued by Fleetwood PA.  Each limited warranty provided:

> Your new motor home, including the structure, plumbing, heating and electrical systems, all appliances and equipment installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or workmanship.

(*Id.*, Ex. D at 02-1.)

On September 16, 2005, Harvell drove the Blue RV from Minnesota to Louisiana.  On September 30, 2005, Paciorek drove the Green RV from Minnesota to Louisiana.  On December 4, 2005, in Louisiana, a heavy rainstorm passed over the two RVs, resulting in water intrusion from several sources in both RVs.  On December 5, 2005, Plaintiffs reported the water intrusion, among other alleged defects, to both Fleetwood PA and Brambilla's.  Thereafter, Fleetwood PA arranged for repairs at Miller's RV ("Miller's").[4]

---

[4]     Prior to Plaintiffs leaving Minnesota, they also had reported certain problems with both RVs to Brambilla's.  Plaintiffs contend that Brambilla's service employee

(Footnote Continued on Next Page)

On December 6, 2005, and December 28, 2005, Plaintiffs brought the Blue and Green RVs, to Miller's.  Plaintiffs identified a number of concerns in each RV, in addition to the water leaks.  As of December 29, 2005, Plaintiffs assert that Miller's had not yet begun repairs on the Blue RV because Fleetwood had not provided authorization. Defendants, on the other hand, assert that over the following months, Miller's addressed more than forty repairs on the RVs.  Defendants further contend that Fleetwood PA paid for all of the repairs except for Plaintiffs' request to have Miller's re-seal the RVs' roofs. Defendants assert that Fleetwood refused payment on that request because a provision in the Owner's Manual recommended that the consumer check the sealants every three months and, if necessary, replace the sealants.  Apparently, Plaintiffs had not performed such checks.

On June 19, 2006, Plaintiffs picked up their RVs from Miller's.  Plaintiffs assert that, at that time, the service manager from Miller's told Paciorek that much of the delay had been due to Fleetwood refusing to provide authorization for certain repairs.  After picking up the RVs from Miller's, Plaintiffs drove the RVs to Texas.  Paciorek contends that during the drive, she noticed water running down the interior of the windshield in the Green RV.

Although Plaintiffs acknowledge that Miller's completed some of the repairs, Plaintiffs contend that Miller's did not repair, or inadequately repaired, certain other

---

(Footnote Continued From Previous Page)
completed some repairs and promised to make other repairs.  Also, Harvell asserts that during the drive to Louisiana, he observed that the air conditioning was not working properly and that the interior trim had come off.

issues.  Further, Plaintiffs contend that they do not know whether Miller's completed

other repairs because Plaintiffs have not been using the RVs.  Both RVs are currently

kept in storage in Texas.  In addition, in June 2006, Plaintiffs had mold testing performed

in both of the RVs.  The tests showed that the Blue RV contained mold at elevated levels.

In November 2006, Plaintiffs commenced this action against Defendants.

Plaintiffs assert breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C.

§ 2301, *et seq*. (Count I); breach of contract (Count II); negligence (Count III); negligent

misrepresentation (Court IV); violations of Minnesota's Consumer Fraud Act, Minn.

Stat. § 325F.69, *et seq*. (Count V); violations of Minnesota's Deceptive Trade Practices

Act, Minn. Stat. § 325D.43, *et seq*. (Count VI); and breach of new motor vehicle

warranties under Minn. Stat. § 325F.665, *et seq*. (*i.e.*, violation of Minnesota's Lemon

Law) (Count VII).

## DISCUSSION

### I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

Court must view the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna

Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has

stated, "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy, and inexpensive determination of every action.'"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d

at 747. The nonmoving party must demonstrate the existence of specific facts in the

record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953,

957 (8th Cir. 1995). A party opposing a properly supported motion for summary

judgment may not rest upon mere allegations or denials but must set forth specific facts

showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256 (1986).

## II.    Fleetwood Enterprises, Inc.

Defendants initially moved to have Fleetwood Enterprises, Inc. ("Fleetwood

Enterprises") dismissed on all counts because Fleetwood Enterprises did not participate

in the manufacture, sale, or warranting of either RV-at-issue and based on the legal

premise that "a parent corporation cannot be held liable for the wrongdoing of a

subsidiary without a showing of improper conduct, fraud, or bad faith." *Urban ex rel.*

*Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 161 (Minn. Ct. App. 2005). Plaintiffs

initially opposed Defendants contentions on this issue in their opposition brief, but after

further discussion at the October 12, 2007 hearing, Plaintiffs stipulated to Fleetwood

Enterprises' dismissal. (*See* 10/12/07 Hearing Tr. (stating, "That is good enough for me,

Judge," after Defendants stipulated that (1) Fleetwood PA is a viable company, and that

if Plaintiffs succeed on their claims and Fleetwood Enterprises is dismissed from the case

Fleetwood PA would pay the settlement; (2) Fleetwood PA is the warrantor; (3) Defendants would not take the position that Fleetwood Enterprises is the warrantor; and (4) any advertising materials were those of Fleetwood PA and not Fleetwood Enterprises).)

Based on the parties' stipulations, the Court grants summary judgment as to all counts of the Amended Complaint brought against Fleetwood Enterprises and Fleetwood Enterprises is dismissed from this action.

## III.    Brambilla's and Fleetwood PA

Defendants also assert that they are entitled to summary judgment on all of Plaintiffs' counts asserted in the Amended Complaint against Brambilla's and Fleetwood PA. The Court addresses each count in turn.

### A.    Count I – Breach of Warranty

Defendants contend that Count I of the Amended Complaint seeks to impose liability on Fleetwood PA and Brambilla's pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. ("MMWA"). Section 2304 of the MMWA sets forth the federal minimum standards for warranties, including the following: (1) remedy all defects, malfunctions, or nonconformities in its product within a reasonable time and without charge; and (2) allow the customer to elect either a refund or replacement if the warrantor is unable to repair the defect or malfunction after a reasonable number of repair attempts. 15 U.S.C. § 2304, subd. (a)(1), (4).

Defendants assert that they are not subject to the obligations imposed by the MMWA and therefore Count I should be dismissed. Specifically, Defendants assert that

the MMWA obligations do not apply to Fleetwood PA's "limited" warranties because the MMWA only applies to "full" warranties.  In addition, Defendants assert that the MMWA obligations do not apply to Brambilla's because Brambilla's did not issue a warranty for either RV and the MMWA applies only to a warrantor.

Plaintiffs did not respond to Defendants' arguments regarding the MMWA in their brief.  But at the October 12, 2007 hearing, Plaintiffs conceded that there were problems with their MMWA claims.  Even so, Plaintiffs contend that Count I of the Amended Complaint encompasses more than just a claim under the MMWA.  Specifically, Plaintiffs assert that Count I also contemplates a common law breach of warranty/UCC warranty claim,[5] a claim that Plaintiffs assert Defendants have ignored.  Plaintiffs assert that questions of fact exist as to whether Defendants breached the common law warranties codified in the UCC by their delay and failure to authorize and complete repairs.  In other words, Plaintiffs assert that Defendants breached a warranty by failing to complete the repairs within a reasonable time.  In addition, Plaintiffs assert that questions of fact exist with respect to an alleged express warranty given by Brambilla's.  Therefore, Plaintiffs assert that summary judgment should be denied as to these claims.

In response, Defendants assert that Plaintiffs did not plead a UCC claim. Defendants assert that Count I does not reference the UCC or the provisions of the UCC that Defendants allegedly breached.  Instead, Defendants assert that Count I only

---

[5]     At the hearing, Plaintiffs asserted that Count I encompasses a common law/UCC warranty claim because Count I in the Amended Complaint is captioned generically "Breach of Warranty."

references the MMWA and that a reasonable interpretation of Count I is that it only asserts an MMWA claim.

The Court finds that no genuine issues of material fact preclude summary judgment in Defendants' favor as to the MMWA claim. Thus, the Court grants Defendants' motion for summary judgment as to Count I insofar as that Count alleges violations of the MMWA.

The Court also finds that Count I does not encompass common law/UCC breach of warranty claims as currently drafted. Although a party is only required to make a short and plain statement of its claims, the allegations of Count I are expressly framed within the context of the MMWA. This leads one to reasonably believe that the claim is solely based on the MMWA, and not the UCC. Given this, the Court denies Defendants' motion without prejudice as to Count I insofar as that Count is supposed to represent a claim for common law/UCC breach of warranty and grants Plaintiffs leave to amend their Amended Complaint to correct Count I's deficiencies.

## IV.     Counts II, III, and IV – Breach of Contract, Negligence, Negligent Misrepresentation

Defendants assert that Counts II, III, and IV fail as a matter of law and therefore should be dismissed. Plaintiffs concede that Counts II, III, and IV are technically barred and do not present genuine issues of material fact for trial. Based on this concession, the Court grants Defendants' motion as to Counts II, III, and IV, and orders that that Counts II, III, and IV of the Amended Complaint be dismissed with prejudice.

**V.     Count V – Minnesota Consumer Fraud Act (Minn. Stat. § 325F.69, *et seq*.)**

Plaintiffs allege that Defendants violated the Minnesota Consumer Fraud Act ("CFA") and assert that under Minnesota's Private Attorney General Statute (the "Private AG Statute"), Minn. Stat. § 8.31, subd. 3a, Plaintiffs are entitled to the recovery of money damages.  Defendants assert that Plaintiffs' claim fails as a matter of law for two reasons.  First, Defendants assert that the CFA provides only for injunctive relief, not money damages.  Second, Defendants assert that under the Private AG Statute, money damages are only allowed where the CFA claim benefits the public at large, and Defendants contend that no public benefit will be conferred here.  In response, Plaintiffs assert that they have sought injunctive relief in the form of rescission of their Purchase Agreements.  In addition, Plaintiffs assert that if they receive a result in their favor, it will "likely [] confer a public benefit by discouraging Defendants from continuing to offer deceptive advertising and fraudulent statements regarding their recreational vehicles or make the vehicles that they manufacture, sell and warrant conform to those representations."  (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 26.)

As to Defendant's first argument, the CFA states in relevant part, as follows:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is *enjoinable* as provided in section 325F.70.

Minn. Stat. § 325F.69, subd. 1 (emphasis added).  Section 325F.70 provides:

The attorney general or any county attorney may institute a civil action in the name of the state in the district court for an *injunction* prohibiting any

> violation of sections 325F.68 to 325F.70.  The court, upon proper proof
> that defendant has engaged in a practice made *enjoinable* by section
> 325F.69, may *enjoin* the future commission of such practice. . . .

Minn. Stat. § 325F.70, subd. 1 (emphasis added).  The Court concludes that the statute

makes clear that injunctive relief is the only remedy directly available under the CFA.

Here, injunctive relief in the form of "rescission is a permissible remedy under

Minnesota's consumer-fraud provisions."  *Ponzo v. Affordable Homes of Rochester, LLC*,

No. A04-2234, 2005 WL 1804644, at *4 (Minn. Ct. App. Aug. 2, 2005).  Therefore,

Defendants motion for summary judgment is denied on this ground.

However, the Court agrees with Defendants that Plaintiffs' CFA claim does not

benefit the public at large.  Under Minnesota law, the attorney general is authorized to

prosecute consumer fraud violations by seeking injunctive relief and civil penalties.

Minn. Stat. § 8.31, subd. 1.  In addition, in certain circumstances, individual persons

injured by a violation of the CFA may seek private remedies through the Private AG

Statute.  Specifically, the Private AG Statute states the following:

> In addition to the remedies otherwise provided by law, any person injured
> by a violation of any of the laws referred to in subdivision 1[, which
> includes the CFA,] may bring a civil action and recover damages, together
> with costs and disbursements, including costs of investigation and
> reasonable attorney's fees, and receive other equitable relief as determined
> by the court . . . .

Minn. Stat. § 8.31, subd. 3a.  But in order for an award of damages under this statute to

be allowed, the plaintiff must demonstrate that the action benefits the public as a whole,

rather than only the plaintiff individually.  *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn.

2000) ("[T]he Private AG Statute applies only to those claimants who demonstrate that

their cause of action benefits the public."); *see also Overen v. Hasbro, Inc.*, Civ. No. 07-1430 (RHK/JSM), 2007 WL 2695792, at *2 (D. Minn. Sept. 12, 2007) ("[I]ndividuals who bring a cause of action pursuant to the Private AG Statute must show that the action is brought to benefit the public." (citing *Ly*, 615 N.W.2d at 314)).

Here, Plaintiffs only seek relief that will directly benefit themselves (*i.e.*, rescission, damages). Plaintiffs do not seek relief that will benefit the public. *See Zutz v. Case Corp.*, No. Civ.02-1776, 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003) ("To determine whether a lawsuit is brought for the public benefit the Court must examine not only the form of the alleged misrepresentation, but also the relief sought by the plaintiff."). Plaintiffs' assertion that with rescission of their own personal Purchase Agreements, the public will somehow benefit because the Defendants will be discouraged from continuing their alleged current conduct in advertising and/or making representations to buyers is too broad of an application of the Private AG Statute. *See Behrens v. United Vaccines, Inc.*, 228 F. Supp. 2d 965, 971 (D. Minn. 2002) ("To be sure, the loss of any false advertising claim might counsel the advertiser to be more forthright in its advertisement of its other products, we see no real prospect of a public benefit, other than a theoretical one."). As the *Behrens* court found, here, Plaintiffs do not seek the type of equitable relief that would support a finding that their cause of action benefits the public—"they do not request any future injunction on the Defendant[s'] advertising, nor any injunction on the Defendant[s'] marketing of any other [2005

Fleetwood Southwind RVs]." *Id*. at 972. "Rather, they seek monetary compensation [and rescission] for what are, in every respect, personal and not public losses." *Id*.[6]

Even if the Private AG Statute does not limit "public benefit" to injunctive relief, the relief sought by Plaintiffs here is still only personal. *See Overen*, 2007 WL 2695792, at *3 (dismissing Plaintiff's claims under the CFA stating that "Plaintiff is not seeking any sort of injunctive relief that would alter the practices of Hasbro such that it would serve a public benefit"); *see also Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 389 n.3 (Minn. Ct. App. 2004) (pointing out that "[t]he district court concluded that there was no public interest at stake and held that attorney fees were not available" and that the plaintiffs "would not be entitled to damages from their consumer fraud action").[7] Here, Plaintiffs' request for an injunction in the form of rescission is personal and is not the sort of injunctive relief that would alter Defendants' practices such that it would serve a public benefit. Therefore, Plaintiffs' claim for damages under the CFA in conjunction with the Private AG Statute fails as a matter of law.

---

[6]     *Jacobs v. Rosemount Dodge-Winnebago S.*, 310 N.W.2d 71 (Minn. 1981), a case relied on by Plaintiffs, is distinguishable. There, the court did not address the public benefit requirement that is required in order for the Private AG Statute to apply, which is later explained by the Minnesota Supreme Court in *Ly*, 615 N.W.2d at 314.

[7]     The *Duxbury* court upheld liability where a seller misrepresented to farmers the quality of its feed. However, the court stated that "[e]ven if the submission of damages on this theory were a fundamental mistake of law, there was no prejudice to [the defendant], and the error does not require reversal." *Id*.

**VI.    Count VI – Minnesota Deceptive Trade Practices Act (Minn. Stat. § 325D.43, *et seq*.)**

Plaintiffs also allege that Defendants violate the Minnesota Deceptive Trade Practices Act ("DTPA") and assert that under the Private AG Statute, Minn. Stat. § 8.31, subd. 3a, Plaintiffs are entitled to the recovery of compensatory damages, attorney fees, and costs and disbursements. Defendants assert that Plaintiffs' claim fails as a matter of law.

First, Defendants assert that the DTPA does not provide for money damages, but instead, provides only for injunctive relief. Second, Defendants assert that because the DTPA is not among the statutes listed in the Private AG Statute § 8.31, subd. 1, which allows for private remedies for the prosecution of actions under those statutes, Plaintiffs' claim for private remedies must fail. Finally, Defendants assert that Plaintiffs' claim for monetary relief must fail as a matter of law because Plaintiffs seek damages for misrepresentations that allegedly occurred in the past, whereby the DTPA applies only to prevent future damage.

Similar to their arguments regarding the Minnesota CFA, Plaintiffs assert that they have sought injunctive relief in the form of rescission of their Purchase Agreements. Also, Plaintiffs contend that DTPA claims are permissible under the Private AG Statute and that the list of statutes provided in the DTPA is not an exclusive list. In addition, Plaintiffs point out that because the Private AG Statute was enacted prior to the DTPA, the drafters of the Private AG Statute could not have intended to exclude the DTPA from

its provisions.  Plaintiffs do not respond to Defendants' argument that the DTPA applies

only to prevent future damage, not past damage.

> The DTPA states the following, in relevant part:
>
> A person likely to be damaged by a deceptive trade practice of another may be granted *an injunction* against it under the principles of equity and on terms that the court considers reasonable.  Proof of monetary damage, loss of profits, or intent to deceive is not required . . . .

Minn. Stat. § 325D.45, subd. 1 (emphasis added).  The Court concludes that the plain

language of the statute unambiguously provides that injunctive relief is the only remedy

directly available under the Minnesota DTPA.  *See Four D., Inc. v. Duthland Plastics*

*Corp.*, No. Civ. 01-2073, 2002 WL 570655, at *5 (D. Minn. Apr. 15, 2002) ("A

complaint that alleges a violation of the MDTPA and seeks only monetary damages fails

to state a claim upon which relief can be granted because it is not a remedy available

under the MDTPA.").  Plaintiffs do not dispute this conclusion.  Instead, as discussed

above, Plaintiffs assert that they have sought injunctive relief in the form of rescission of

their Purchase Agreements.  Consistent with the Court's analysis above, the Court denies

Defendants' motion for summary judgment in this regard.

The Court also declines to accept Defendants' argument that because the DTPA is

not among the statutes listed in the Private AG Statute, Minn. Stat. § 8.31, subd. 1,

Plaintiffs claim for private remedies fails as a matter of law.  The Private AG Statute

provides the following, in relevant part:

> The attorney general shall investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade, and ***specifically, but not exclusively,*** the Nonprofit Corporation Act (sections 317A.001 to 317A.909), the Act Against Unfair

> Discrimination and Competition (sections 325D.01 to 325D.07), the Unlawful Trade Practices Act (sections 325D.09 to 325D.16), the Antitrust Act (sections 325D.49 to 325D.66), section 325F.67 and other laws against false or fraudulent advertising, the antidiscrimination acts contained in section 325D.67, the act against monopolization of food products (section 325D.68), the act regulating telephone advertising services (section 325E.39), the Prevention of Consumer Fraud Act (sections 325F.68 to 325F.70), and chapter 53A regulating currency exchanges and assist in the enforcement of those laws as in this section provided.

Minn. Stat. § 8.31, subd. 1 (emphasis added).  The Court finds that the plain language of the statute does not exclusively exclude the DTPA from its provisions.

However, the Court agrees with Defendants in that Plaintiffs' claim for monetary relief under the DTPA in conjunction with the Private AG Statute fails as a matter of law. Minn. Stat. § 325D.45, subd. 1, states that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it[.]"  This statute allows redress for anticipated damages that are likely to occur in the future.  Here, Plaintiffs seek damages for alleged misrepresentations made prior to the sale of the RVs. Therefore, the damages on which Plaintiffs base their claim are damages that have already occurred.  The DTPA does not apply to such past damages.  *See Four D.*, 2002 WL 570655, at *5 (stating that "Count V [the DTPA claim] as pled fails to state a claim upon which relief can be granted because it addresses past, not future, harm").  In addition, an award of damages under the Private AG Statute is allowed only if Plaintiffs' demonstrate that the action benefits the public as a whole, rather than only the Plaintiffs. *Ly*, 615 N.W.2d at 314.  As explained above in relation to Plaintiffs' CFA claim, Plaintiffs' request for an injunction in the form of rescission is personal and is not the sort

of injunctive relief that would alter Defendants' practices such that it would serve a

public benefit.  Therefore, Plaintiffs' DTPA claim fails as a matter of law.

**VII.   Count VII – Minnesota's Lemon Law (Minn. Stat. § 325F.665, *et seq*.)**

Plaintiffs also contend that they are allowed protection under Minnesota's Lemon

Law.  Defendants, on the other hand, assert that Minnesota's Lemon Law does not apply

to Fleetwood PA.

The Minnesota Lemon Law Statute provides in relevant part as follows:

> If a new motor vehicle does not conform to all applicable express
> warranties, and the consumer reports the nonconformity to the
> manufacturer, its agent, or its authorized dealer during the term of the
> applicable express warranties or during the period of two years following
> the date of original delivery of the new motor vehicle to a consumer,
> whichever is the earlier date, the manufacturer, its agent, or its authorized
> dealer shall make the repairs necessary to conform the vehicle to the
> applicable express warranties, notwithstanding the fact that the repairs are
> made after the expiration of the warranty term or the two-year period. . . .

> If the manufacturer, its agents, or its authorized dealers are unable to
> conform the new motor vehicle to any applicable express warranty by
> repairing or correcting any defect or condition which substantially impairs
> the use or market value of the motor vehicle to the consumer after a
> reasonable number of attempts, the manufacturer shall either replace the
> new motor vehicle with a comparable motor vehicle or accept return of the
> vehicle from the consumer and refund to the consumer the full purchase
> price . . . .

Minn. Stat. § 325F.665, subd. 2 – 3(a).[8]  The statute defines "motor vehicle" as: "(1) a

passenger automobile . . . including pickup trucks and vans, and (2) the self-propelled

motor vehicle chassis or van portion of a recreational vehicle as defined in section

---

[8]     The current version of the statute is nearly identical in all relevant aspects to the
version codified at the time of the sale of the RVs-at-issue.

168.011, subdivision 25 . . . ."  *Id.*, subd. 1(f).[9]  "Recreational vehicle" includes "motor

homes."  Minn. Stat. § 168.011, subd. 25.

Minnesota's Lemon Law has limited application to motor homes.  "The only

portion of a motor home covered by the lemon law is the 'self-propelled motor vehicle

chassis or van portion.'"  *Anderson v. Newmar Corp.*, 319 F. Supp. 2d 943, 946

(D. Minn. 2004).  And Minnesota's Lemon Law "applies only to manufacturers,

assemblers, and distributors of 'motor vehicles.'"  *Id.*  Therefore, "[w]ith respect to motor

homes, the only entities that can be liable under the lemon law are the manufacturer,

assembler, or distributor of the chassis or van portion."  *Id.*

Here, Defendants present evidence showing that Workhorse Custom Chassis, LLC

manufactured the chassis portions of the RVs-at-issue.  Defendants assert that no one

manufactured the van portions of the RVs because there are no van portions of the

RVs-at-issue.  Accordingly, Defendants contend that Fleetwood PA did not manufacture,

assemble, or distribute the chassis or van portion of either RV-at-issue.  Instead,

Defendants maintain that Fleetwood PA manufactured only the living-quarters portion of

each RV.[10]

---

[9]     In 2005, this provision was found at subdivision 1(e).

[10]    Defendants also assert an argument with respect to whether Plaintiffs are
"consumers" under Minnesota's Lemon Law.  However, Defendants raise this argument
for the first time in their reply brief.  Therefore, the Court is not required to address this
argument here.  *See Black v. Indep. Sch. Dist. No. 316*, 476 F. Supp. 2d 1115, 1121 n.6
(D. Minn. 2007).

Plaintiffs, on the other hand, assert that Fleetwood PA is liable as a manufacturer of the "van portion" of the RVs-at-issue.[11]  Plaintiffs assert that many of the problems that occurred with the RVs arose in the driving portion of the vehicle.  Specifically, Plaintiffs assert that in the Blue RV, the heat was not working for the van portion and it had a defective seal on the dashboard.  (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 31.)  As to the Green RV, Plaintiffs assert that it had a "loose dashboard, loose seal on the dashboard, loose sealing, and water intrusion at the windshield."  (*Id.*)  Defendants contend that no one has manufactured a "van portion" of the RVs because the RVs-at-issue are "Type A" motor homes, they are not equipped with "van portions."

The Court agrees with Defendants.  Minnesota's Lemon Law (Minn. Stat. § 325F.665) relies on Minn. Stat. § 168.011, subd. 25 for the definition of "motor vehicle" and "recreational vehicle."  Pursuant to this statute, "recreational vehicle" includes motor homes.  Minn. Stat. § 168.011, subd. 25 further defines "motor homes" as follows:

(d) Motor homes include a:

(1) type A motor home, which is a raw chassis upon which is built a driver's compartment and an entire body that provides temporary living quarters as described in paragraph (b).

---

[11]     Plaintiffs cite *Smith v. Freightliner*, LLC, 239 F.R.D. 390 (D. N.J. 2006) for the proposition that the "coach" or driver's compartment of the RVs should be distinguished from the living quarters portion of the RVs.  But, the Minnesota Lemon Law Statute differs significantly from the New Jersey Lemon Law Statute.  In Minnesota, the statute covers only the chassis or van portion of the RV, whereby in New Jersey the statute covers the entire motor home, except for its living facilities.  *See* N.J. Stat. Ann. § 56:12-30.  Further, the *Freightliner* court acknowledged that New Jersey's definition is broader than Minnesota's definition.  *Freightliner*, 239 F.R.D. at 395.

(2) type B motor home, which is a van that conforms to the description in paragraph (b) and has been completed or altered by a final-state manufacturer.

Minn. Stat. § 168.011, subd. 25a(d).[12]  Here, Plaintiffs do not dispute that the RVs-at-issue are "Type A" motor homes.

As stated above, "[t]he only portion of a motor home covered by the lemon law is the 'self-propelled motor vehicle chassis or van portion.'"  *Anderson*, 319 F. Supp. 2d at 946.  Here, the evidence shows that Workhorse Custom Chassis, LLC manufactured the chassis portions of the RVs-at-issue, not Fleetwood PA.  The problems that Plaintiffs complain of (*i.e.*, heat not working, dashboard seals, loose dashboards, and water intrusion on the windshield) are not part of the chassis.[13]  Therefore, the question becomes whether the "driver's compartments" of the RVs-at-issue, where these problems are contained, are considered "van portions," and are therefore covered by the Lemon Law, making the manufacturer of these "driver's compartments" liable.

The Court finds that the driver's compartments of the Type A RVs-at-issue are not "van portions" under the Lemon Law.  Minn. Stat. § 168.011, subd. 25a(d) explains that a Type A motor home is "a raw chassis upon which is built a *driver's compartment and an entire body that provides temporary living quarters*[.]"  (Emphasis added.)  The

---

[12]    In 2005, a similar provision was found at subdivision 25(c)(1) & (2).

[13]    Even if the cause of the heat not working can be attributed to an aspect of the chassis, then Plaintiffs' claim still fails here because they have asserted their claim against the wrong Defendant, as Fleetwood PA did not manufacture the chassis portions of the RVs-at-issue.

statute does not say that a Type A motor home has a "van portion," nor does it say that the driver's compartment is separate from or should be treated differently from the body of the RV.  Instead, the statute plainly states that the driver's compartment and the entire body provide the temporary living quarters.  Further, if the drafters had intended for the "driver's compartment" to be equivalent to or part of what is known as a "van portion," they would have so delineated.  But they did not.  Instead, they distinguished a Type A motor home, which is made up of a chassis (which is covered by the statute) and the living quarters (which is not covered by the statute), from a Type B motor home, which consists of a van (which "van portions" would be covered by the statute).  Therefore, according to the plain language of the statute, a Type A motor home does not have what is referred to in the statute as a "van" or "van portion," and the driver's compartment, together with the body of the RV, makes up the temporary living quarters, which are not covered by the Lemon Law.  *See Anderson*, 319 F. Supp. 2d at 946.  Consequently, as a matter of law, the manufacturer of the "driver's compartment" of a Type A motor home is not liable under the Lemon Law Statute, and Defendants' motion for summary judgment as to Count VII is granted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.     Defendants' Motion for Summary Judgment (Doc. No. 18) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

a.       Defendants' motion is **GRANTED** as to Counts II, III, IV,

V, VI, and VII.  Therefore, Counts II, III, IV, V, VI, and VII of the

Amended Complaint (Doc. No. 2) are **DISMISSED WITH PREJUDICE**.

b.      Defendants' motion is **GRANTED IN PART** and **DENIED IN PART** as to Count I.  Plaintiff's Magnuson-Moss Warranty Act claim in Count I of the Amended Complaint  (Doc. No. 2) is **DISMISSED WITH PREJUDICE**.  Within 20 days from the date of this Order, Plaintiffs may amend their Amended Complaint consistent with this Order to assert and provide notice of their basis for their common law/UCC breach of warranty claim.  If Plaintiffs choose not to do so, the Court will dismiss whatever is remaining of Count I of the Amended Complaint without prejudice.  If Plaintiffs choose to Amend their Amended Complaint as described above, Defendants will thereafter be allowed to bring a subsequent dispositive motion before this Court relating to the newly pleaded Count I if they believe in good faith that such motion is justified.


Dated:  November 6, 2007                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court